IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MONTA SUE JOHNSON,

      **Plaintiff,**

  v.
                          Civil Action 2:20-cv-2224
                            Chief Judge Algenon L. Marbley
                            Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL
SECURITY,

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Monta Sue Johnson, brings this action under 42 U.S.C. § 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Social Security Disability and Supplemental Security Income benefits ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 17) and the administrative record (ECF No. 11). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

# I. BACKGROUND

Plaintiff filed previous applications for disability insurance benefits and supplemental security income on April 8, 2010, alleging disability beginning November 1, 2007. (R. at 208.) These applications were denied initially and upon reconsideration. (*Id*.) A hearing was held on October 10, 2012, before Administrative Law Judge ("ALJ") William Paxton who issued a decision on October 18, 2012, finding that Plaintiff was not disabled under the Social Security Act. (R. 208-221.) After the Appeals Council denied review, Plaintiff appealed to this Court. On March 18, 2015, this Court remanded the case for a new hearing. (R. at 17.) *See also Johnson v. Comm'r of Soc. Sec.,* No. 2:14-CV-306, 2015 WL 686298, at *1 (S.D. Ohio Feb. 18, 2015), *report and recommendation adopted sub nom. Johnson v. Colvin*, No. 2:14-CV-306, 2015 WL 1286536 (S.D. Ohio Mar. 18, 2015).

A second hearing was held on August 26, 2016, before ALJ Anne Shaughnessy and she issued an unfavorable decision on October 13, 2016. (R. at 488-499.) On December 19, 2016, Plaintiff filed new applications again asserting that she became disabled on November 1, 2007. (R. at 405-418.) Plaintiff's insured status expired on December 12, 2012. (R. at 424.) These applications were denied initially and upon reconsideration. (R. at 228-259; 262-297.) On November 5, 2018, a hearing was held before ALJ Raymond Rodgers. (R. at 178-204.) Prior to this hearing, Plaintiff amended her onset date to December 19, 2017. (R. at 405-418, 426.)[1] On

---

[1] The Hearing Transcript reveals the following exchange between the ALJ and Plaintiff's counsel:
ALJ: Okay. I can't – usually when I accept an amended onset date – I haven't made up my mind as to what I'm going to do with this case, are you sure you want to amend to the – 12/19/2017 knowing that she'll give up her Title II benefits?
ATTY: Yes, your honor. Unless I'm mistaken I'm showing a date last insured of

February 15, 2019[2], ALJ Rodgers issued a decision finding that Plaintiff was not disabled as defined by the Social Security Act. (R. at 13-38.) The Appeals Council denied review and Plaintiff timely commenced this action. (ECF No. 1.)

## II. HEARING TESTIMONY

### A. Plaintiff's testimony[3]

Plaintiff testified as follows at her most recent hearing in response to questions from her counsel. She has trouble with her lower back and somewhat with her middle back. (R. at 185.) She has "difficulties physically getting through [the] day as a result. (R. at 186.) For example, she cannot lift a laundry basket and she breaks out into a sweat when she runs the vacuum. (*Id*.) Her back affects her ability to be on her feet and move and she spends her days back and forth between sitting and standing. (*Id*.) Her back is getting worse as she gets older. (*Id*.) She has started having difficulties with her right shoulder such that she hardly could move her arm and the pain was so bad that her blood pressure would "go through the roof." (*Id*.) She also has COPD and suffers with bronchitis or pneumonia a lot. (R. at 191.) Just walking a short distance will cause her to get out of breath and require her to sit down and rest or use her inhaler. (*Id*.) Sometimes she uses a nebulizer machine. (R. at 192.) Her breathing issues also cause a

---

December 31, 2012, with a prior ALJ in 2016, and there – res judicata is going to be the issue regardless of –

(R. at 183-184.)

[2] The Court Transcript Index indicates that the decision is dated February 12, 2019, but the decision itself is dated February 15, 2019. (R. at 33.)
[3] The Undersigned limits the analysis of the hearing testimony and medical evidence to the issues raised in Plaintiff's Statement of Errors.

3

persistent cough. (R. at 192-193.) Her disabled daughter lives with her. (R. at 193.) Sometimes one of her other daughters comes in to help with her daughter, and around the house generally, and sometimes Plaintiff's boyfriend helps. (R. at 193-194.)

When asked by the ALJ about her treatment for back pain, Plaintiff stated that there is not "a whole lot" her doctor is doing. (R. at 196.) She explained that she had a bad reaction to medication he prescribed so now she uses mainly "home remedies, like the Epsom salt with the wintergreen, and the ice packs." (*Id*.) Plaintiff further testified that her doctor has not referred her to an orthopedic specialist or a surgeon. (*Id.*) She explained, however, that he had recommended physical therapy and she went one day. (*Id*.) She recounted that she was told there was not a lot to do, that the exercises they recommended caused shoulder pain, and that she did not go back because it was not helping. (R. at 196-197.) When the ALJ asked about her heart condition, Plaintiff said that she is supposed to go back [to see her heart doctor] in a few months but that it "was good the last time" she was there. (R. at 197.) She explained that the last time she had been there [to see her heart doctor], she had passed her stress test but she had not been there in a while. (*Id*.)

### III. RELEVANT MEDICAL EVIDENCE

#### A. State Agency Consultants

At the initial level, in February 2017, Dimitri Teague, M.D., opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday. (R. at 237.) He further opined that Plaintiff could frequently climb ramps and stairs; occasionally climb ladders, ropes and scaffolds; and frequently

4

balance, stoop, kneel, crouch, or crawl. (R. at 237-238.) Additionally, he found that Plaintiff should avoid concentrated exposure to extreme heat, cold or humidity, fumes, odors, dusts, gases, poor ventilation and hazards. Accordingly, he concluded that Plaintiff was capable of performing light work. (R. at 242.) At the reconsideration level on July 20, 2017, Maureen Gallagher, D.O., rated Plaintiff's postural limitations the same as at those found at the initial level but further opined that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, or poor ventilation but could withstand unlimited exposure to other environmental limitations. (R. at 273-274.) Dr. Gallagher confirmed the initial assessment that Plaintiff was capable of performing light work. (R. at 278.)

## IV. ADMINISTRATIVE DECISIONS

### A. The Administrative Decision Dated October 13, 2016

On October 13, 2016, ALJ Shaughnessy issued her decision. (R. at 488-499.) At step one of the sequential evaluation process,[4] she found that Plaintiff had not engaged in substantially gainful activity since November 1, 2007, the alleged onset date. (R. at 490.) The ALJ found that Plaintiff had the following severe impairments: coronary artery disease; asthma/chronic obstructive pulmonary disease; mild degenerative disc disease of the lumbar spine; depressive disorder; and generalized anxiety disorder. (*Id.*) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 491.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

---

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(b) except she should avoid even moderate exposure to temperature extremes and humidity. The claimant can understand and remember instructions that are basic or moderately detailed. The claimant can have brief and superficial interaction with coworkers and supervisors. The claimant can have no fast-paced work or work demanding high production quotas.

(R. at 493.)

ALJ Shaughnessy determined that Plaintiff was unable to perform her past relevant work as a cashier, stock clerk, or receptionist. (R. at 497.) ALJ Shaughnessy went on to find that Plaintiff was capable of performing jobs existing in significant numbers in the national economy, including assembler, inspector, and hand packer. (R. at 498.) She therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

**B. The Administrative Decision Dated February 15, 2019**

On February 15, 2019, ALJ Rodgers issued his decision. (R. at 596-612.) At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 19, 2017, the amended alleged onset date. (R. at 20.) The ALJ found that Plaintiff had the following severe impairments: lumbar strain; degenerative disc disease of the thoracic spine; arthritis of the shoulder; coronary artery disease; angina; hypertension; chronic obstructive pulmonary disease (COPD); post-traumatic stress disorder (PTSD); anxiety; and depression. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

7

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform [light][5] work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift and carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight hour workday; stand and/or walk for six hours in an eight hour workday; occasional climbing of ramps or stairs, but may never climb ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, and crouching; no crawling; frequent forward, lateral, and overhead reaching with the right upper extremity; must avoid concentrated exposure to pulmonary irritants such as fumes; odors, dust, and gases; no exposure to hazardous machinery or unprotected heights; able to understand, remember, and carryout simple tasks; no fast-paced production; working low stress job defined as only occasional decision-making and only occasional changes in the work setting; occasional interaction with coworkers and supervisors; and no interaction with the public.

(R. at 25.)

In formulating this RFC, the ALJ assigned significant weight to the opinions of Drs. Teague and Gallagher, stating as follows:

As for the opinion evidence, I assign significant weight to the opinions of the state agency medical consultants at initial and reconsideration who opined the claimant could perform a reduced range of light work. (Exhibits B2A; B3A; B5A; B6A). These opinions are consistent with the medical evidence of record, as detailed above, particularly the normal to mild medical imaging, the normal spirometry test, the normal to at most mild physical examinations, her lack of orthopedic treatment, and the claimant's high functioning activities of daily living such as helping care for her disabled daughter. (Exhibits B2F/13-15; B6F/49-50; B7F/2-4; B9F/11; B22F/5; 22, 40, 82; B14F/15; B15F/2-5; B18F/5; B19F/13, 23; B22F/6). However, I added right upper extremity limitations based on the new evidence in the file of beginning arthritis in her acromioclavicular joint of her right shoulder. (Exhibits B10F/13; B22F/6). Accordingly, I assign these opinions significant weight.

(R. at 30.)

---

[5] Although the ALJ appears to have omitted the word "light" in the statement of Plaintiff's RFC, he confirms later in his opinion that he is limiting the Plaintiff to light work. (R. at 31.)

ALJ Rodgers determined that Plaintiff is unable to perform her past relevant work as a retail associate, office clerk, or telemarketer. (R. at 31-32.) ALJ Rodgers went on to find that Plaintiff was capable of performing jobs existing in significant numbers in the national economy, including hand bander and nonpostal mail clerk. (R. at 33.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of*

*Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff puts forth one contention of error: The Administrative Law Judge erred in not finding Plaintiff disabled under Social Security Acquiescence Rulings 98-3(6) and 98-4(6). The Undersigned disagrees.

### A. **Plaintiff's RFC and *Drummond***

Plaintiff argues that, under both SSR 98-3(6) and SSR 98-4(6), she should have been found disabled under the medical-vocational "GRID" Rule 201.14,[6] given that she was closely approaching advanced age as of her amended onset date of December 19, 2017. She explains that the previous ALJs[7] limited her to sedentary work but the ALJ here erroneously found that she had experienced an improvement in her condition such that she now had the residual functional capacity to perform light work. Plaintiff maintains that this finding of improvement is not

---

[6] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14 (directing a finding of disability at age 50 based on a sedentary RFC, high school education or more, and no transferable skills).
[7] The Commissioner points out that, because the 2012 decision from ALJ Paxton was remanded, it has no applicability here. *See Wireman v. Commissioner of Social Security*, 60 F. App'x 570, 571 (6th Cir. 2003) (decisions that were vacated pursuant to remands for further proceedings never became final). The Undersigned agrees that only ALJ Shaughnessy's 2016 decision is relevant for purposes of a *Drummond* analysis.

10

supported by substantial evidence. In fact, Plaintiff argues, if anything, she actually experienced a worsening of her conditions since the time of the previous decisions.[8] Plaintiff's argument is not well-taken.

The United States Court of Appeals for the Sixth Circuit previously held that principles of *res judicata* apply to both claimants and the Commissioner in Social Security cases. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841–42 (6th Cir. 1997). The *Drummond* Court specifically held that absent evidence of "changed circumstances" relating to a claimant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ." *Id*. at 842. Applying this approach, the *Drummond* Court concluded that an ALJ was bound by a previous ALJ's determination that the claimant retained the RFC to perform sedentary work because evidence did not indicate that the claimant's condition had improved. *Id.* at 843.

Following *Drummond*, the Social Security Administration issued AR 98-4(6), which provides, in pertinent part, as follows:

> [W]hen adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

---

[8] As the Commissioner also points out, Plaintiff's challenge here is limited exclusively to the ALJ's findings concerning her physical impairments. The Undersigned agrees. Plaintiff explains that, despite his determination that her mental impairments had improved, the current ALJ formulated an RFC that was more restrictive with respect to her mental impairments. (ECF No. 12, at 19.) Accordingly, the Undersigned considers any arguments relating to her mental impairments to have been waived by Plaintiff. *See Stiltner v. Com'r of Soc. Sec.*, 244 F. App'x 685, 686 (6th Cir. 2007) (holding that plaintiff waived argument by not including it in her brief).

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998); *see also Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 425 (6th Cir. 2015) ("Read together, *Drummond* and Acquiescence Ruling 98-4(6) clearly establish that a subsequent ALJ is bound by the legal and factual findings of a prior ALJ unless the claimant presents new and material evidence that there has been either a change in the law or a change in the claimant's condition.").

Thereafter, the Sixth Circuit clarified its decision in *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). The Sixth Circuit explained that principles of "consistency between proceedings and finality with respect to resolved applications" protected by *Drummond* "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id*. at 931. The Court went on to specifically reject the Social Security Administration's argument that "[i]n reviewing a second application by the same individual, . . . the administrative law judge should completely ignore earlier findings and applications." Instead, the Court emphasized that "[f]resh review is not blind review." *Id*. at 934. In short, the Sixth Circuit therefore found that "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application" and that a "ALJ should have another opportunity to review the application under the correct standard." *Id*. at 933–34.

In Section 1-5-4-62 of the Social Security Administration's Hearings, Appeals and Litigation Law Manual (HALLEX), guidance is provided about how to implement the *Drummond*

ruling. In relevant part, that guidance states that a finding of improvement must be based on evidence that is both "new" and "material." In this context, "new" simply means evidence not presented to the prior adjudicator. "Material" evidence is evidence that "both differs from that presented in the prior claim and warrants a finding different than that made in the decision on the prior claim." Additionally, the ALJ's decision "must refer to the AR [Acquiescence Ruling 98-4(6)] and include rationale indicating why any new evidence is or is not material to a particular findin g." *Blaney v. Colvin*, No. 2:15-CV-2449, 2016 WL 3679983, at *5 (S.D. Ohio July 12, 2016)(citing HALLEX Section 1–5–4–62, at www.ssa.gov/OPHome/hallex/hallex/html.)

The ALJ correctly articulated the governing legal standard and indicated that his decision was based on new evidence. (R. at 17.) Later in his decision, he addressed ALJ Shaughnessy's opinion more specifically as follows:

> I assign the prior ALJ's opinion dated October 13, 2016, little weight because there is new and material evidence demonstrating the claimant is less limited than previously assessed. (Exhibit B10E/4-25). For example, as detailed above, the claimant's routine and conservative treatment history with normal to mild physical examination findings by her primary care providers are all consistent with at least the performance of work consistent with the residual functional capacity finding. (Exhibits B7F; B10F; B12F; B15F; B19F). Moreover, mental status examination findings by the psychological consultative examiner, the lack of significant mental health treatment, and the claimant's reports of her mental health medications improving her symptoms are all consistent with the residual functional capacity finding and the medical evidence of record. (Exhibits B5F; B7F/5-7; B10F/13; B12F/6). Additionally, I find the new and material evidence as the claimant's functioning as greatly improved as evidenced by physical examination findings from her treating primary care provider at Exhibits 7F and 15F which find a normal gait, normal strength in the extremities, normal breath sounds, and the only abnormal finding generally is pain with range of motion. (Exhibits 7F; 15F). There is no lumbar imaging in this record and the claimant has not had any orthopedic treatment whatsoever. Even the prior ALJ in 2016 found the back impairment as only mild lumbar degenerative disc disease. (Exhibit B10E/9. 13). Nothing in the medical

13

> evidence of record supports a finding of any severe back related impairment other than the finding of lumbar strain. Accordingly, I assign this opinion little weight.

(R. at 30-31.)

The current ALJ plainly considered the new evidence pertaining to Plaintiff's physical impairments and found that Plaintiff's RFC needed to be updated accordingly. That is, he performed a "fresh review" and was not bound by ALJ Shaughnessy's decision. Accordingly, the Court must review the current decision and determine whether substantial evidence supports that decision. The Undersigned is satisfied that it does. For example, as the excerpted discussion reveals, the ALJ considered that, since the prior ALJ decision, Plaintiff had received routine and conservative treatment from her primary care physician. (R. at 30 citing R. at 684-731; 746-768; 790-808; 841-845; 885-924.) Significantly, he also noted that there is no lumbar imaging in the record or evidence of orthopedic treatment such that there is no medical evidence supporting a finding of a back-related impairment. (*Id.*) The lack of imaging was confirmed by Plaintiff's counsel at the hearing. (R. at 187.) According to Plaintiff's counsel, Plaintiff had been receiving "essentially primary care treat[ment]." (*Id.*) Plaintiff also testified that she has not seen an orthopedic specialist or a surgeon but she went to physical therapy one day where she was told there "wasn't a whole lot to do." (R. at 196-197.) "The lack of evidence can, in fact, be substantial evidence for an ALJ's decision." *Marrero Ortiz v. Comm'r of Soc. Sec.*, No. 1:19 CV 2518, 2020 WL 7684865, at *7 (N.D. Ohio Sept. 30, 2020), *report and recommendation adopted sub nom. Julio Marrero Ortiz v. Comm'r of Soc. Sec.*, No. 1:19 CV 2518, 2020 WL 7585619 (N.D. Ohio Dec. 22, 2020) (citing *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 932 (6th Cir. 2007) ("The ALJ properly considered as relevant the fact that [the claimant's] medical

14

records did not indicate that [claimant] received significant treatment ... during the relevant time period.")). The ALJ further reasonably considered Plaintiffs' activities of daily living, specifically acknowledging her care for her disabled daughter. (R. at 30 citing R. at 193.)

Beyond this, the ALJ also relied on the opinions of the State agency consultants, Drs. Teague and Gallagher, at both the initial and reconsideration levels. (R. at 30.) In these opinions, offered in March and May 2017, respectively, both consultants concluded that Plaintiff was capable of performing a reduced range of light work. (R. at 30 citing R. at 258, 278.) Additionally, the ALJ cited indications in the record that Plaintiff's treating cardiologist did not find her limited from a cardiac standpoint. (R. at 31 citing R. at 252, 272.) Nevertheless, the ALJ limited Plaintiff to light work, in part, to account for any cardiovascular-related impairments. (R. at 31.)

Plaintiff's argument to the contrary is that the ALJ was obligated to accept the previous ALJs' findings unless he could demonstrate that her impairments had improved. First, as noted earlier, the only prior decision relevant here is ALJ Shaughnessy's decision from 2016. Further, as indicated by the discussion of the applicable *Drummond* standard set forth above, Plaintiff's argument misconstrues the ALJ's obligation under the circumstances here. Finally, Plaintiff's point-by-point comparison of her physical conditions, apparently designed to demonstrate the errors in the ALJ's analysis, is really nothing more than an argument that the ALJ should have weighed the evidence differently. However, as has been well-established, "[i]f substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there

is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

In sum, the ALJ correctly articulated the governing legal standard and expressly stated that his decision was based on new evidence. (R. at 17, 30-31.) His review of the post-2016 records, which he cited as the basis of his decision, shows that he gave various reasons for reaching a different conclusion from ALJ Shaughnessy as to Plaintiff's physical limitations in the RFC. Further, he did so in a way that permits the Undersigned to understand the basis for his ruling. To the extent that Plaintiff has raised the issue of substantial evidence, as explained above, the ALJ's decision is supported by such evidence. Plaintiff's disagreement with the ultimate conclusion reached by the ALJ does not mean that the ALJ did not conduct a proper *Drummond* analysis. Accordingly, there is no merit to Plaintiff's statement of error.

## VII. CONCLUSION

From a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding thatdefendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: June 28, 2021  /s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge

17